IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KAREEMAH AMIRA-JABBAR,

Plaintiff

v.                                                    CIVIL 08-2408 (JA)

TRAVEL SERVICES, INC., et. al,

Defendants

OPINION AND ORDER

This matter is before the court on motion for summary judgment filed by the

defendants, Travel Services, Inc., Joanne Ferguson, John Ross, Miguel Hernández-

Roses and Gilbert Anthony Linares, on April 29, 2010.  (Docket No. 22.)  The

defendants' motion was opposed by plaintiff, Kareemah Amira-Jabbar, on May 11,

2010.  (Docket No. 31.)  For the reasons set forth below, the motion for summary

judgment is hereby GRANTED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2006, plaintiff, a black woman, was hired as an assistant

group service manager by Travel Services, Inc. ("TSI").[1]  (Docket No. 1, at 7, ¶

34 & Docket No. 21, at 19-20, ¶¶ 1 & 7.)  The offer letter from TSI, which plaintiff

signed, included a non-compete clause that barred her from taking employment

with any direct competitor of TSI for a period of one year after terminating her

_____

[1] TSI is a duly organized corporation, created and/or authorized to do
business within the Commonwealth of Puerto Rico.  (Docket No. 1, at 2, ¶ 3.)

CIVIL 08-2408 (JA)                          2

employment with TSI.  (Docket No. 47-3.)  As a manager, plaintiff earned a yearly

salary of $27,000.  (Docket No. 21, at 20, ¶ 7.)  After the probation period was

completed, plaintiff's salary was raised to $32,500.  (Id. ¶ 11.)  Plaintiff's duties

as an assistant group service manager included following out orders prescribed

by the sales, with different contracts through vendors and companies from the

United States and all over, to handle their transportation, tours and other needs,

problems or situations that could arise.  (Id. ¶ 8.)  Plaintiff alleges that during her

employment at TSI she was harassed and discriminated against because of her

color.  (Docket No. 1, at 8, ¶ 36.)  According to plaintiff, during a Christmas gift-

exchange activity held by TSI in December 2006, Mr. Ross made a derogatory

comment to her regarding her race.  (Docket No. 1, at 8, ¶ 39 & Docket No. 31-3,

at 2.)  Plaintiff, who speaks English, claims that Mr. Ross's comment was made

in Spanish.  (Docket No. 1, at 9, ¶ 44.)  Also, plaintiff claims that the comment

made by Mr. Ross was made with the intention of diminishing and insulting her

because of her color.  (Id. at 9-10, ¶ 49.)

    In September 2007, TSI approved a golf outing in Dorado.  (Docket No. 31-

3, at 4-5.)  Some of TSI's employees, including plaintiff and Mr. Hernández,

attended the outing.  (Id.)  After the event, Marilyn Hernández, an employee of

TSI, uploaded pictures of the outing on Facebook, a social networking website.

(Id.)  One of the pictures uploaded was of plaintiff, Mr. Hernández and other TSI

CIVIL 08-2408 (JA)                              3

employees.  (Docket No. 31-5.)  On the comments section of the website, plaintiff

wrote the following:  ". . . remind me that taking pictures in the shade is really a

dis-service to my wonderful chocolate skin."  (Id.)  Mr. Hernández responded to

plaintiff's comment by writing the following:  "That is why you always have to

smile!!!!"  (Id.)  Plaintiff claims that  Mr. Hernández' comment was racist.  (Docket

No. 1, at 10, ¶ 56.)

On December 1, 2007, several employees of TSI decided to personalize

candy canes to put them as reindeer ornaments in the company's Christmas tree.

(Docket No. 31-3, at 8.)  Plaintiff personalized her candy cane by putting thumb

tacks that resembled hair rollers on it.  (Id. & Docket No. 31-4.)  Like plaintiff

other employees personalized candy canes to resemble themselves.  (Docket No.

11, at 8, ¶ 73.) For instance, a very tall female employee included a figurine that

was larger than the others.  (Id.)  Another female employee who is very short

included a figurine that was much smaller than the others, while another female

employee with curly hair curled up her figurine's antlers.  (Id.)  Plaintiff alleges

that when she arrived at the TSI office she noticed that someone had painted her

candy cane black and placed it at the top of the Christmas tree.  (Docket No. 1,

at 12, ¶¶ 67-68.)  According to plaintiff, some of her co-workers were next to the

Christmas tree commenting and laughing about the situation.  (Id. ¶ 69.)  Plaintiff

complained to TSI about the incident and an investigation was conducted.

CIVIL 08-2408 (JA)                        4

(Docket No. 31-4 & Docket No. 1, at 13, ¶ 74.)  Besides the candy cane incident,

TSI investigated the incident that allegedly took place during the Christmas gift-

exchange as well as the Facebook incident.  (Docket No. 31-6, at 2 & 11.)  The

investigation did not reveal who was the person responsible for painting plaintiff's

candy cane black.  (Id. at 20.)  TSI, nevertheless, admitted that the candy cane

incident was offensive.  (Id.)  As a preventive measure TSI informed plaintiff that

it was going to review its harassment policy with all of its employees.  (Docket No.

31-8.)  On December 10, 2007, plaintiff resigned from TSI. (Docket No. 1, at 15,

¶ 88.)  On that same date, plaintiff filed a claim before the Anti-Discrimination

Unit ("ADU") against TSI alleging race discrimination.  (Docket No. 47-5.)  On May

14, 2008, plaintiff requested a Notice of Right to Sue in connection with the

December 10, 2007 ADU charge.  (Docket No.  47-11.)  The Right to Sue Letter,

however, was not issued by the Equal Employment Opportunity Commission

("EEOC") until September 30, 2008.  (Docket No. 52-1, at 5-7.)

On or around October, 2008, TSI was retained to run a hospitality desk at

the Grand Meliá Hotel in Río Grande, Puerto Rico, to provide sightseeing tours and

transportation.  (Docket No. 47-6, at 2-4.)  On October 12, 2008, Trillis Pendelton

who was a TSI contractor retained to man the Grand Meliá hospitality desk sent

a written communication to Mrs. Ferguson complaining about some incidents

allegedly involving plaintiff, who at the time was working for Dragonfly, a

CIVIL 08-2408 (JA)                    5

competitor of TSI.  A follow up email was also sent by Mrs. Pendelton on October 13, 2008.  (Docket No. 47-7, 47-8, at 2-6, ¶ 8; 47-6, at 3-5.)  On October 24, 2008, Mrs. Ferguson contacted Yolanda Díaz by email to notify her that at the beginning of her employment with TSI, plaintiff had signed a non-compete agreement.  (Docket No. 47-10.)

On December 24, 2008, plaintiff filed a complaint against TSI, Mrs. Ferguson,[2] Mr. Ross,[3] Mr. Hernández[4] and Mr. Linares.[5]  (Docket No. 1.)  In essence, she alleges that the defendants discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a et seq. (Id. at 4, ¶ 25.)  Plaintiff's complaint also includes various claims under the laws of Puerto Rico.  (Id. at 7, ¶ 33.)

On April 29, 2010, the defendants filed their motion for summary judgment, statement of uncontested facts and supporting memorandum of law.  (Docket Nos. 22, 23 & 24.)  The defendants argue that plaintiff's hostile work environment

_____

[2] Mrs. Ferguson was the executive vice-president and president of TSI.  She was also co-owner and stockholder of TSI as well as plaintiff's direct supervisor. (Docket No. 1, at 2, ¶¶ 5-7.)

[3] Mr. Ross was the operations manager of TSI.  (Id. at 3, ¶ 11.)

[4] Mr. Hernández worked at TSI in the operations area.  (Id. ¶ 15.)

[5] Mr. Linares was TSI's business manager.  (Id. ¶ 19.)

CIVIL 08-2408 (JA)                              6

claim and constructive discharge  claim have to be dismissed because they are not

supported by the allegations contained in the complaint.  (Docket No. 24, at 15.)

According to the defendants, plaintiff never experienced any discriminatory

comments or actions while she worked for TSI.  (Id. at 13.)  They claim that TSI

cannot be held responsible for the Facebook incident because the account did not

belong to TSI and therefore TSI had no control over it.  (Id. at 4 & 14.)  According

to the defendants, Mr. Hernández who allegedly was the one who wrote, had no

authority to act on behalf of TSI via the Facebook account.  (Id. at 8.)  As to the

discriminatory comment that Mr. Ross allegedly made and the candy cane

incident, the defendants argue that Mr. Linares investigated both matters after

plaintiff filed a complaint with Mrs. Ferguson.  (Id. at 6 & 14.)  In particular with

respect to the candy cane incident the defendants claim that as part of the

investigation Mr. Linares sent emails to every employee in TSI, who could have

been implicated in the case, requesting an immediate interview with them.  (Id.

at 6.)  Also, the defendants claim that Mr. Linares reviewed TSI's policy on sexual

harassment with Mr. Ross, Mr. Héctor Pérez and Mr. Hernández as well as the

EEOC's compliance manual.  (Id. at 7.)  With regards to the comment made my

Mr. Ross, the defendants claim that Mr. Linares interviewed both Mr. Ross and

plaintiff.  (Id.)  According to the defendants, plaintiff told Mr. Linares that she was

unsure what Mr. Ross had said to her because the comment was made in Spanish.

CIVIL 08-2408 (JA)                    7

(Id.)   As to Mr. Ross, the defendants claim the he denied making any discriminatory comment to plaintiff.  (Id. at 14.)  The defendants also claim that besides plaintiff and Mr. Ross, Ms. Olga Jiménez, Mr. Hernández, Mr. Pérez and Ms. Melissa Puello, who where all at the office when the alleged incident took place, were interviewed by Mr. Linares.  (Id. at 8.)  The defendants claim that after concluding the interviews, Mr. Linares found that there was no pattern of discrimination.  (Id.)  The defendants further argue that contrary to what plaintiff claims, she was not the only black employee at TSI.  (Id. at 14-15.)  They claim that Sharely Alamo Pagán, a black Puerto Rican woman, was also a fellow employee at TSI.  (Id. at 15.)  Finally, the defendants argue that plaintiff was not constructively discharged.  (Id. at 2.)  They claim that plaintiff resigned voluntarily after being informed of the results of the investigation conducted by Mr. Linares.  (Id. at 5.)

        On May 11, 2010, plaintiff opposed the defendants' motion for summary judgment.  (Docket No. 31.)  She contends that there are genuine issues of material facts with respect to whether she was subjected to racially discriminatory intimidation, ridicule and insult that altered the conditions of her employment at TSI and created an abusive hostile working environment for her, resulting in her constructive discharge.  (Id. at 1.)  She also claims that there are issues of material fact as to whether TSI established effective racial harassment policies

CIVIL 08-2408 (JA)                              8

and grievance procedures, and whether their implementation was reasonable. (Id.)  Plaintiff argues that TSI is liable for Mrs. Hernández' Facebook comment because it allowed its employees to post photos and comments on the website during company time for company purposes.  (Docket No. 31, at 7 & 10.)  She claims that TSI did not have a firewall or a software in place to prevent employees from accessing Facebook during company hours. (Id. at 10.)  Plaintiff also claims that Mrs. Ferguson was present when Mr. Ross made the discriminatory remark but that she did not do anything to investigate or discipline him.  (Id. at 2.)  According to plaintiff, it was common for Mr. Ross to make racial jokes at work about people from other ethnic groups, and that TSI knew about it.  (Id. at 7.)  Plaintiff claims that TSI's inaction shows that it was willing to tolerate and condone racially discriminatory conduct, and permit a hostile work environment.  (Id. at 2.)  With regard to the candy cane incident, plaintiff claims that she felt racially targeted.  (Id. at 2-3.)  She argues that TSI's investigation was deficient and demonstrative that its harassment policies and grievance procedures were ineffective because it failed to interview all of the witnesses and because it failed to identify and sanction the persons responsible for the incidents. (Id. at 8 & 11.)

On June 18, 2010, the defendants filed a supplementary memorandum of law in support of their motion for summary judgment. (Docket No. 48.)  The defendants essentially argue that plaintiff failed to prove that she was the victim

CIVIL 08-2408 (JA)                          9

of retaliation.  (Id. at 2.)  The defendants' motion was opposed by plaintiff on July

9, 2010.  (Docket No. 52.)  Contrary to what the defendants claim, plaintiff argues

that the retaliation claim cannot be dismissed because there are material issues

of fact in controversy.  (Id. at 1-2.)  The defendants replied to plaintiff's

opposition on July 23, 2010.  (Docket No. 54.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c)(2).  The intention of summary judgment is to

"pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has

properly supported [its] motion for summary judgment, the burden shifts to the

nonmoving party, with respect to each issue on which [it] has the burden of proof,

to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

"[T]he mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment;

CIVIL 08-2408 (JA)                    10

the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson. Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment."). The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)); see also López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

    "A genuine issue exists when there is evidence sufficient to support rational resolution of the point in favor of either party." Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. . . . " Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir. 2005) (quoting United States v. One Parcel of Real Prop., 960 F.2d at 204).

    Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue

CIVIL 08-2408 (JA)                    11

for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  However, a moving party "may move for summary judgment 'with or without supporting affidavits.'"  Id. at 323 (quoting Rules 56(a) and (b)).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); see also Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)) ("[the court] must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.").

## III.  ANALYSIS

### A.  Title VII Hostile Work Environment Claim

To establish a *prima facie* case for hostile work environment, a plaintiff must show that: "(1) he [or she] is a member of a protected class; (2) he [or she] experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; . . . (5) the harassment was objectively and subjectively offensive[,]" and (6) that some basis for employer liability exists.  Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008) (citing Douglas v. J.C. Penney Co., 474 F.3d 10, 15 (1st Cir. 2007)); see also Navarro v. U.S. Tsubaki, Inc., 577 F. Supp.

CIVIL 08-2408 (JA)                    12

2d 487, 509 (D. Mass. 2008).  "[W]hen assessing whether a workplace is a hostile environment, this Court must 'look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance.'"  Matías-Cardona v. Verizon Wireless P.R., Inc., 610 F. Supp. 2d 157, 170 (D.P.R. 2009) (quoting Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment."  Mojica v. El Conquistador Resort & Golden Door Spa, ____ F. Supp. 2d ____ , 2010 WL 1992575, at *15 (D.P.R. May 13, 2010) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Crespo-Vargas v. U.S. Gov't, 573 F. Supp. 2d 532, 551-52 (D.P.R. 2008).  Simply put, "[t]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins."  Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir. 2010) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19 (1st Cir. 2002)).

The defendants argue that plaintiff cannot establish elements four, five and six of her *prima facie* case.  The defendants are correct.  First, only three incidents allegedly occurred between September 5, 2006 and December 10, 2007.  The first incident occurred in December 2006, in which Mr. Ross allegedly made a

CIVIL 08-2408 (JA)                          13

discriminatory comment to plaintiff.  Nine months later in September 2007,  the

Facebook incident took place and three months later in December, 2007 the candy

cane incident occurred.  While it cannot be denied that the comments allegedly

made to plaintiff were offensive, they are nevertheless "offhand comments" or

"isolated incidents" that are insufficient to create an abusive environment.  See

Thompson v. Coca Cola Co., 497 F. Supp. 2d 80, 92 (D. Mass. 2007) (employee

failed to establish prima facie case of racially hostile work environment through

evidence of three comments over one and a half year period).  Furthermore,

viewing the record in the light most favorable to plaintiff and drawing all

inferences in her favor, the court cannot find that the defendants' conduct was

physically threatening nor that it interfered with her work performance.  Second,

although plaintiff complained to Mrs. Ferguson about some of the incidents

indicating that she felt racially targeted and humiliated, the defendants' conduct

was neither objectively nor subjectively offensive so as to establish a hostile work

environment.  See Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 172

(D.P.R. 2009) (citing De la Vega v. San Juan Star, Inc., 377 F.3d 111, 118 (1st

Cir. 2004)).  Third, TSI can not be held accountable for the actions of plaintiff's

co-workers.  For TSI to be liable, plaintiff needed to show it "'knew or should have

known of the . . . harassment and failed to implement prompt and appropriate

action[,]'" however she did not.  Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225,

CIVIL 08-2408 (JA)                    14

230 (1st Cir. 2007) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st

Cir. 2002)).   Plaintiff does not question that TSI did not know or should have

known about the harassment.   Instead she argues that the investigation was

deficient because not all of the witnesses were interviewed and because the

people responsible for the incidents were neither identified nor disciplined.

Plaintiff  is mistaken.

        TSI's remedial actions in this case satisfy the "prompt and appropriate"

standard.   Although the First Circuit has not set a bright line rule for what

constitutes "prompt and appropriate action," it has noted that "[a] reasonable jury

could find that an employer response was not prompt and appropriate without

being so indifferent as to indicate an attitude of permissiveness amounting to

discrimination."   Forrest v. Brinker Intern. Payroll Co., 511 F.3d at 231 n.8.

"Examples of responses that have been deemed appropriate 'have often included

prompt investigation of the allegations, proactive solicitations of complaints,

scheduling changes or transfers, oral or written warnings, reprimands, and

warnings that future misconduct could result in progressive discipline.'" Wilson

v. Moulison N. Corp., 691 F. Supp. 2d 232, 238 (D. Me. 2010) (quoting Adler v.

Wal-Mart Stores, Inc., 144 F.3d 664, 675 (10th Cir. 1998)).   The record in this

case shows that plaintiff's concerns were addressed in a timely fashion in order

to prevent any possible harassment.   As soon as plaintiff notified Mrs. Ferguson

CIVIL 08-2408 (JA)                    15

about the candy cane incident, she immediately ordered Mr. Linares to conduct an investigation.  (Docket No. 24-2, at 12.)  Plaintiff made the complaint on December 1, 2007, the investigation was commenced on December 2, 2007 and on December 5, 2007 it was completed.  (Id.)  Also, it is important to point out that the investigation conducted by Mr. Linares on behalf of TSI was not centered solely on the candy cane incident.  (Id. at 14.)  As part of his investigation, Mr. Linares looked into the other two incidents that allegedly had taken place after they were brought to TSI's attention by plaintiff.  (Id.) The investigation consisted mostly of interviews to TSI employees including those identified by plaintiff as responsible for the incidents.  (Id. at 12.)  Also, TSI granted plaintiff's request for leave of absence until the investigation was concluded.  (Id.)  Furthermore, even though the investigation did not reveal who was the person responsible for the candy cane incident, TSI reviewed its harassment policy with all of its employees including Mr. Pérez, Mr. Ross and Mr. Hernández.  (Id. at 11.)  With regard to the incident involving Mr. Ross, TSI did not reprimand him because Mrs. Jabbar was not able to say specifically what was the comment that he allegedly had made to her.  (Id. at 14.)  The comment according to plaintiff was made in Spanish.  (Id.) She only told Mr. Linares that she believed that Mr. Ross's comment was racial in nature.  (Id.)  As to the Facebook incident, TSI asked its IT contractor to block access to the website for all office computers.  (Id.)  Having considered the facts

CIVIL 08-2408 (JA)                              16

of this case in the light most favorable to plaintiff, the court finds that the

defendants responded promptly and appropriately to the December 1, 2007

complaint.  Plaintiff has failed to establish a trial worthy issue as to whether there

is employer liability for the hostile work environment created by TSI.  Accordingly,

plaintiff's Title VII hostile work environment claim must be dismissed with

prejudice.[6]

     B.  Title VII Constructive Discharge Claim

     "Constructive discharge that results from . . . a hostile work environment

is actionable under Title VII." Acosta v. Harbor Holdings & Operations, Inc., 674

F. Supp. 2d 351, 362 (D.P.R. 2009) (citing Pa. State Police v. Suders, 542 U.S.

129, 143 (2004)). "In order to establish a claim based on constructive discharge

'plaintiff must prove that his employer imposed working conditions so intolerable

that a reasonable person would feel compelled to forsake his job rather than to

submit to looming indignities.'" Acosta v. Harbor Holdings & Operations, Inc., 674

F. Supp. 2d at 361-63 (quoting Landrau-Romero v. Banco Popular De P.R., 212

F.3d 607, 613 (1st Cir. 2000)).  The standard for assessing a constructive

discharge claim "is an objective one; it 'cannot be triggered solely by an

_____

    [6] Since plaintiff's failed to establish a *prima facie* case for hostile work
environment, the court will not address the parties arguments regarding the
application of the Faragher-Ellerth defense.  (Docket No. 45, at 7-9 & Docket No.
52, at 5-7).  See Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir.
2008) (citing Faragher v. City of Boca Raton, 524 U.S. at 807; Burlington Indus.,
Inc. v. Ellerth, 524 U.S. 742, 765 (1998)).

CIVIL 08-2408 (JA)                    17

employee's subjective beliefs, no matter how sincerely held.'" Román v. Potter, 604 F.3d 34, 42 (1st Cir. 2010) (quoting Marrero v. Goya of P. R., Inc., 304 F.3d at 28).  Thus, that a plaintiff was subjected to the "ordinary slings and arrows that workers routinely encounter in a hard, cold world" is insufficient to state a claim for constructive discharge.  De La Vega v. San Juan Star, Inc., 377 F.3d at 117 (quoting Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003) (quoting Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)).  Because plaintiff failed to establish a *prima facie* case for her hostile work environment claim, the court needs not address her constructive discharge claim. See Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d at 362 (quoting Pa. State Police v. Suders, 542 U.S. at 149); Dykstra v. First Student, Inc., 324 F. Supp. 2d 54, 68 (D. Me. 2004) (holding that a failure to make out a hostile work environment claim effectively disposes of the constructive discharge claim as well).  Therefore, the court finds that plaintiff's constructive discharge claim must be dismissed with prejudice.

C.  Title VII Retaliation Claim

Because plaintiff did not present direct evidence in support of her retaliation claim the court must apply the McDonnell Douglas burden shifting scheme. Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004)); see McDonnell

CIVIL 08-2408 (JA)                    18

Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Under this scheme, a plaintiff establishes a *prima facie* case for retaliation by showing "that: (1) she engaged in [a] protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Agusty-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 56-57 (1st Cir. 2010) (quoting Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007)). "Once a plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the defendant . . . to 'articulate a legitimate, non-retaliatory reason for  [its] employment decision." Román v. Potter, 604 F.3d at 39 (quoting Enica v. Principi, 544 F.3d 328, 343 (1st Cir. 2008)).  "If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Valetín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94-95 (1st Cir. 2006) (quoting Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d at 26).

Plaintiff claims that the defendants retaliated against her after she filed a charge for discrimination before the ADU and EEOC.  (Docket No. 52.) According to plaintiff the complaint made by Mrs. Pendelton was addressed by Mrs. Ferguson to Dragonfly as well as to Hendrick Santos, Felipe Cervantes and Jose Ferreras, all members of management at the Gran Meliá Hotel.  (Id. at 1.)  The complaint according to plaintiff was filled with false and defamatory statements.  (Id.)

CIVIL 08-2408 (JA)                      19

Additionally plaintiff claims that she was informed by Dragonfly that TSI had contacted them claiming that she could not work with them as per an agreement not to compete. (<u>Id.</u> at 1 & 2.)  Plaintiff claims that as a result of TSI's action she was terminated from her employment.  (<u>Id.</u>)  According to plaintiff, a reasonable jury could infer from the chronological sequence of events that there was a retaliatory animus behind TSI's actions.  (<u>Id.</u> at 4-5.)

The defendants concede that the filing of the ADU charge is a protected activity under Title VII for purposes of establishing the first prong of plaintiff's *prima facie* case. (Docket No. 48, at 6.)  The defendants, however, do not admit that plaintiff suffered an adverse employment action and therefore argue that she cannot establish any causal connection with the protected activity.  (<u>Id.</u>)  The defendants also contend that there is no temporal proximity between plaintiff's protected activity and the actions she alleges are retaliatory.  (<u>Id.</u>)  The defendants also believe that even if it is assumed that plaintiff is able to establish a *prima facie* case, defendants have legitimate, non-discriminatory reasons for their actions.  (<u>Id.</u> at 7.)  According to the defendants, Mrs. Pendelton made the complaint because plaintiff allegedly was trying to take away TSI's business by telling clients that Dragonfly was the only one authorized to provide its services at the Gran Meliá.  (<u>Id.</u>)  The defendants contend that they contacted Dragonfly after they learned of the complaint and after finding out  that plaintiff was working

CIVIL 08-2408 (JA)                              20

for them.  (Id. at 8.)  The defendants, therefore, claim that they communicated with Dragonfly with the purpose of letting them know of the non-competition agreement.  (Id.)

In appropriate circumstances, courts have recognized "that anti-retaliation provisions may cover actions that are not directly employment-related." Gore v. Trs. of Deerfield Acad., 385 F. Supp. 2d 65, 72 (D. Mass. 2005). Nevertheless, in order to be subject to liability under Title VII for retaliation, a "defendant must (1) fall within Title VII's statutory definition of 'employer,' and (2) have exercised substantial control over significant aspects of the compensation, terms, conditions or privileges of plaintiff's employment." Rivera v. Telefónica de P.R., 913 F. Supp. 81, 86 (D.P.R. 1995) (citing Magnuson v. Peak Technical Servs., Inc., 808 F. Supp. 500, 506 (E.D. Va. 1992)).  In this case there is no question that TSI is an employer under Title VII.  See 42 U.S.C. 2000e(b) (an employer under Title VII includes any "person engaged in an industry affecting commerce . . ., and any agent of such person . . . . ")  The question, however, is whether TSI was plaintiff's employer at the time the alleged retaliatory actions took place and at the time that plaintiff engaged in the protected activity.  The court finds that it was not.  Plaintiff worked for TSI until December 10, 2007,  and on that same date she filed a complaint before the ADU and EEOC.  At the time that the alleged retaliatory actions took place, October, 2008, plaintiff was working for Drogonfly.

CIVIL 08-2408 (JA)                    21

Thus, its clear that if someone had any substantial control over the compensation, terms, conditions or privileges of plaintiff's employment it was Dragonfly and not TSI.  Based on the foregoing, the court finds that plaintiff's Title VII retaliation claim fails.

It is important to note that regardless of whether TSI was plaintiff's employer, plaintiff's claim would have still failed.  Although causal connection may be established due to the temporal proximity between the alleged retaliatory actions and the issuance of the Right to Sue letter, the defendants proffered reason for communicating with plaintiff's new employer was both legitimate and non-discriminatory.  See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (holding that close temporal proximity is sufficient to establish a *prima facie* case of retaliation).  The defendants in this case did not take any adverse employment action against the plaintiff.  See Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008)) (Examples of adverse employment actions in the retaliation cases include the following: (1) "termination of employment"; (2) "demotion evidenced by a decrease in wage or salary"; (3) "a less distinguished title"; (4) "a material loss of benefits"; (5) "significantly diminished material responsibilities"; or (6) "other indices that might be unique to a particular situation".)  The fact that Dragonfly terminated plaintiff from her employment cannot be construed as a retaliatory

CIVIL 08-2408 (JA)                    22

action by TSI.  As stated before, after finding out that plaintiff was working with

Dragonfly, a direct competitor of TSI, TSI communicated with them to let them

know about the non-competition agreement.  Based on these facts there is no

question that TSI would have still contacted Dragonfly regardless of whether or

not she engaged in a protected activity.  It is a logical and natural reaction for any

company, including TSI, to take the appropriate measures to protect its business

when its well being and stability are at risk.  More importantly is the fact that

there is no evidence that shows that plaintiff was deterred by TSI or any of the

other defendants from engaging in the protected activity.  See Acosta v. Harbor

Holdings & Operations, Inc., 674 F. Supp. 2d at 368 (quoting Noviello v. City of

Boston, 398 F.3d 76, 90 (1st Cir. 2005)).  Furthermore, plaintiff failed to provide

any evidence that would show that the defendants' legitimate non-discriminatory

reasons for its actions were pretextual.  See Kosereis v. Rhode Island, 331 F.3d

207, 213 (1st Cir. 2003) (stating that, as compared to a court's consideration of

whether a plaintiff has established a prima facie case, "pretext analysis . . . is

more demanding").  Plaintiff only submits that the facts, as presented, establish

that TSI's alleged non-discriminatory reasons for its actions were merely a pretext

to hide their retaliatory and discriminatory animus.  (Docket No. 52, at 5.)

Plaintiff's argument is incorrect.  It is well settled that after the defendant proffers

a non-discriminatory reason for its actions, the plaintiff has to "prove, by a

CIVIL 08-2408 (JA)                          23

preponderance, that the defendant's explanation is a pretext for unlawful discrimination." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 221 (1st Cir. 2007).  Plaintiff's "subjective speculation and suspicion" that she was treated unfairly is not enough to establish that the defendant's actions were pretextual.  Id. at 222 (quoting Quiñones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006)).  Consequently, plaintiff's Title VII retaliation claim must be dismissed with prejudice.

D.  Puerto Rico Law Claims

Plaintiff filed supplemental claims pursuant to Puerto Rico Act No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 et seq.; Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 and § 5142; Puerto Rico Act No. 80 of May 31, 1976, as amended, P.R. Laws Ann. tit. 29, § 185a et seq.; and Puerto Rico Act No. 115 of December 20, 1991, as amended, P.R. Laws Ann. tit. 29, § 149 et seq.  (Docket No. 1, at 7, ¶ 33.)  Since all of plaintiff's federal claims were dismissed, the court will not exercise supplemental jurisdiction over the Puerto Rico law claims which "posit novel and complex issues of state law . . . . " Szendrey-Ramos v. First BanCorp., 512 F. Supp. 2d 81, 88 (D.P.R. 2007); see Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 217 (D.P.R. 2009); Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 198-99 (D.P.R. 2009).  Accordingly, plaintiff's state law claims are

CIVIL 08-2408 (JA)                              24

dismissed without prejudice.  Cao v. Puerto Rico, 525 F.3d 112, 116 (1st Cir. 2008) (holding that when state law claims are dismissed without prejudice, a plaintiff is free to assert them in the appropriate state forum).

IV.  CONCLUSION

For the reasons set froth above, the defendants' motion for summary judgment is GRANTED in its entirety.  Accordingly, plaintiff's federal claims are DISMISSED WITH PREJUDICE.  Also, plaintiff's supplemental state law claims are DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to enter judgment accordingly.

At San Juan, Puerto Rico, this 28th day of July, 2010.

S/JUSTO ARENAS
Chief United States Magistrate Judge